IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

IN RE: )
)
HAMPTON CAPITAL PARTNERS, LLC, )
d/b/a Gulistan Carpet, )
)
Debtor )
)
)

CASE NUMBER: 13-80015
CHAPTER 11

**MOTION TO (A) APPROVE SALE OF SUBSTANTIALLY ALL MACHINERY AND
EQUIPMENT, (B) ESTABLISH RELATED SALE PROCEDURES, INCLUDING
BREAK-UP FEE, (C) TRANSFER ANY AND ALL CLAIMS, LIENS, ENCUMBRANCES
AND INTERESTS IN SALE ASSETS TO PROCEEDS OF SALE, (D) APPROVE FORM
AND MANNER OF NOTICE OF SALE, AND (E) SCHEDULE HEARINGS**

NOW COMES Hampton Capital Partners, LLC, d/b/a Gulistan Carpet (the "Debtor"),
pursuant to §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9006,
and hereby moves the Court as follows:

1.      On January 7, 2013 (the "Petition Date"), the Debtor filed a voluntary petition
seeking relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of
its assets and operates its business as a debtor-in-possession.

2.      An official committee of unsecured creditors (the "Committee") has been
appointed and is represented by counsel.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and
1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper pursuant
to 28 U.S.C. §§1408 and 1409.

4.      The Debtor is a Virginia limited liability company and a wholly-owned subsidiary
of Ronile, Inc., a Delaware corporation ("Ronile").  The Debtor is in the business of
manufacturing and selling medium to high-end carpets under the Gulistan® brand name to both
residential and commercial markets.  The Debtor sells its carpets to customers directly and
through independent retailers, franchises and leading home improvement retailers.

5.      The Debtor's principal offices and primary manufacturing plant are located at
3140 NC 5 Highway, Aberdeen, NC 28315 (the "Aberdeen Facility").  The Debtor also has a
secondary manufacturing location at 19320 Airport Road, Wagram, NC 28396, which is used

Case 13-80015   Doc 165   Filed 04/05/13   Page 1 of 7

primarily for the dying process in the Debtor's manufacturing operations (the "Wagram Facility").

6.    The Debtor is winding down operations and intends to fully liquidate its assets in an orderly fashion. After consultation with the Committee, the Debtor is proposing the following procedure for the sale of the machinery and equipment.

**Existing Liens or Interests**

7.    Bank of America, N.A. ("Bank of America") has perfected, first-priority liens or security interests (the "BofA Claims") in substantially all of the Debtor's machinery and equipment, consisting of the BofA Pre-Petition Liens and the DIP Liens (as such terms are defined in the Final Order (1) Authorizing Debtor-In-Possession to Obtain Financing, Grant Security Interests and Accord Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); and (2) Modifying Automatic Stay [Docket No. 132]).  The total balance owed on Bank of America's pre-petition and post-petition debt as of March 15, 2013 was $6,119,646, consisting of $3,453,725 in pre-petition debt, and $2,665,921 in post-petition debt.

8.    Ronile also asserts a junior lien or security interest in all of the Debtor's machinery and equipment.  However, Ronile's UCC-1 Financing Statements had lapsed, a new Financing Statement was filed on December 31, 2012, within 90 days prior to the Petition Date, and the security interest may be subject to avoidance and in bona fide dispute.

9.    Varilease Finance, Inc. ("Varilease") may claim a purchase money security interest (the "Varilease Claim") in certain Miura boilers pursuant to a certain Master Lease Agreement dated December 17, 2007, and a Settlement Agreement dated March 13, 2012. Pursuant to the Settlement Agreement, upon payment of $75,000.00, and approximately $15,000.00 for the 2012 property taxes owed with respect to the boilers, title to the boilers shall transfer to the Debtor.  The Debtor contends that under applicable law, title has already transferred to the Debtor and Varilease has retained only a security interest, but Varilease filed a UCC-1 Financing Statement with the Virginia Secretary of State on February 2, 2012 and the lien is not in bona fide dispute.   The boilers are included within the assets to be sold pursuant to this motion.[1]

---

[1] The debtor also has a lease agreement with NMHG Financial Services, Inc., with respect to two Hyster E65Z lifts. NMHG filed a UCC-1 Financing Statement, but the Debtor believes this is a true lease and these lifts are not included within the assets to be sold pursuant to this motion.

10.     Ronile asserts ownership of certain Superba Heatsetter equipment identified by asset tag numbers 551-B0480 and 551-B477, which items Ronile contends were leased to the Debtor pursuant to an oral lease.  The Debtor, Ronile and Bank of America have agreed to set aside $75,000 from the net sale proceeds from the sale of the Sale Assets, without prejudice to the Court's subsequent determination of the final amount to be allocated to this equipment (which Ronile agrees shall not exceed $75,000), which amount shall be held in the trust account of counsel for the Debtor pending further Order of this Court regarding the parties' ownership and/or interests in the equipment and the proceeds derived therefrom.

11.     There are outstanding, unpaid ad valorem property tax claims for 2012 with respect to the Debtor's personal property in the aggregate amount of approximately $56,522, (i) $30,427.50 with respect to the personal property located at the Aberdeen Facility and (ii) $26,094.22 with respect to the personal property located at the Wagram Facility, and property tax claims for 2013 are a lien under North Carolina law but have not yet been billed or determined as to amount (collectively, the "Personal Property Tax Claims").

**Proposed Sale**

12.     In this motion (the "Sale Motion"), the Debtor seeks approval of the sale of substantially all of the Debtor's machinery and equipment located at the Aberdeen Facility and Wagram Facility (the "Sale Assets") free and clear of all claims, liens encumbrances and interests, pursuant to the sale procedures attached hereto as Exhibit A (the "Sale Procedures"). The Debtor believes that the value of the Sale Assets is best realized by the proposed sale, and that the proposed Sale Procedures will enable the Debtor to obtain a purchase price which is fair, reasonable, and in the best interest of the estate.

13.     The Debtor has entered into an Asset Purchase Agreement with Gordon Brothers Commercial and Industrial, LLC and Counsel RB Capital, LLC (the "Stalking Horse Bidder"), a copy of which is attached hereto as Exhibit B (the "Stalking Horse Agreement"), for the sale of the Sale Assets at a purchase price of $5,075,000 subject to higher and better bids and approval by the Court after notice and hearing. Pursuant to the Sale Procedures, any entity other than the Stalking Horse Bidder that wishes to submit a bid to purchase the Sale Assets will be required to submit a definitive Asset Purchase Agreement, substantially in the form of the Stalking Horse Agreement, specifying all terms and conditions of their offer, and any such bids may not be

subject to further due diligence after submission or conditional upon obtaining financing in order to close the transaction.

14.     The Sale Assets shall not include any assets that are not specifically identified in the Asset Purchase Agreement.  The Sale Assets shall be sold "as is, where is," with no representations or warranties except for those contained in the Stalking Horse Agreement. No executory contracts or leases shall be assumed or assigned in connection with the sale.

15.     The Debtor requests that upon completion of the sale procedure and final hearing to consider the best and highest bid, the Court then enter an Order (the "Sale Order") to (i) approve the sale and transfer of the Sale Assets to the party submitting the highest and best bid, free and clear of any claims, liens or interests, (ii) transfer any and all claims, liens, encumbrances or interests in or upon the Sale Assets to the proceeds of sale, and (iii) provide that the Sale Order is effectively immediately upon entry pursuant to Bankruptcy Rule 6004.

16.     The net sale proceeds derived from the sale of the Sale Assets shall be allocated and distributed, or held pending further Orders of the Court, as follows:

a.      Payment in full of the principal and outstanding interest at the contract rate for the Varilease Claim.

b.      Payment in full of the principal and outstanding interest at the statutory rate for the Personal Property Tax Claims.

c.      The portion of the purchase price allocated to the Superba Heatsetter, of which Ronile asserts ownership, shall be held in the trust account for counsel to the Debtor pending further Order of the Court.

d.      All remaining net proceeds shall be applied to the outstanding principal, interest and fees owed on the BofA Claims, first to the pre-petition debt and then to the post-petition debt, until satisfied in full.

e.      Any remaining net proceeds shall be retained in the Debtor's account, pending further Order of this Court.

17.     The Debtor seeks authority to consummate an asset sale promptly in order to maximize the value of the Sale Assets for the benefit of creditors, and proposes the following schedule, subject to the Court's approval:

| | |
|---|---|
| April 18, 2013 | Sale Procedures Hearing and entry of Sale Procedures Order |

| | |
|---|---|
| May 6, 2013 | Deadline to submit Initial Bids |
| May 9, 2013 | Auction |
| May 13, 2013 | Deadline to file Objections |
| May 16, 2013 | Sale Approval Hearing |
| later of May 30, 2013 and five (5) days of the Sale Approval Order becoming a Final Order | Deadline for Sale Closing |

18. The Debtor seeks approval of the Sale Procedures in advance of the bid process and requests that the Court schedule and conduct an initial hearing (the "Sale Procedures Hearing") to:

a. Enter an Order (the "Sale Procedures Order") substantially in the form attached hereto as Exhibit C (i) approving the Sale Procedures, including approval of the Break-up Fee, (ii) approving the Notice of Sale (the "Notice") attached hereto as Exhibit D, (iii) making the Notice Finding (as defined below), (iv) setting a deadline for any objection to the proposed sale, and (v) scheduling a second hearing (the "Sale Approval Hearing") to finally hear all other aspects of the Sale Motion and to consider confirmation of the sale to the Prevailing Bidder (as defined in the Sale Procedures).

b. Make findings (the "Notice Finding") that adequate notice of the proposed public sale of the sale assets shall consist of posting the Notice on the Court's website and providing copies of the Notice and the Sale Procedures Order, by mail, email or overnight courier service, to:

i. The Bankruptcy Administrator.

ii. The Committee.

iii. Any creditors asserting a lien upon or interest in any or all of the Sale Assets.

iv. Any party who has filed a notice of appearance and request for copies of any notices or pleadings filed in this bankruptcy case.

v. All entities who submit to the Debtor or to its counsel an expression of interest in purchasing the Sale Assets and request for relevant materials.

19. As set forth in the Sale Procedures, the Debtor requests that the Court require that objections, if any, to the relief requested in this Sale Motion (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules of this Court, (c) be filed with the Court and delivered

to the following parties (the "<u>Limited Notice Parties</u>") at least one (1) business day prior to the Sale Approval Hearing:

      a.      Michael D. West, Bankruptcy Administrator, 101 S. Edgeworth St., P.O. Box 1828, Greensboro, NC 27402.

      b.      John A. Northen, counsel for the Debtor, Northen Blue, LLP, P.O. Box 2208, Chapel Hill, NC 27515-2208.

      c.      Bruce Buechler, counsel for the Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068.

      d.      Bruce Nathan, counsel for the Committee, Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, New York 10020.

      e.      James S. Rankin, Jr., counsel for Bank of America N.A., Parker Hudson Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue NE, Atlanta, GA 30303.

      f.      Kevin J. Simard, counsel for the Stalking Horse Bidder, Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110.

WHEREFORE, the Debtor prays the Court for the following relief:

1.      After notice and hearing, entry of a Sale Procedures Order (i) approving the Sale Procedures, including approval of the Break-up Fee, (ii) approving the Notice, (iii) making the Notice Finding, (iv) setting a deadline for any objections to the proposed sale, and (v) setting a date for the Sale Approval Hearing to finally hear all other aspects of the Sale Motion and to consider confirmation of the sale to the Prevailing Bidder.

2.      Upon conclusion of the Sale Approval Hearing and after consideration of any competing bids and any duly filed objections, entry of the Sale Order (a) designating the Prevailing Bidder, (b) authorizing the sale of the Sale Assets to the Prevailing Bidder free and clear of any and all claims, liens, encumbrances and interests, (c) finding that the Prevailing Bidder is a "good faith purchaser" pursuant to Section 363(m) of the Bankruptcy Code, and that none of the grounds set forth in Section 363(n) exist with respect to a sale to the Prevailing Bidder, (d) finding that one or more of the grounds for a sale free and clear pursuant to Section 363(f) of the Bankruptcy Code has been met as to each claim, lien, encumbrance or interest in any or all of the Sale Assets, and transferring any and all claims, liens, encumbrances and interests in or upon the Sale Assets to the proceeds of the sale, (e) designating a Back-up Bid,

and authorizing a sale on the terms of the Back-up Bid in the event the Prevailing Bidder fails or refuses to timely close the transaction, (f) authorizing the distribution of the sale proceeds as set forth herein, including payment of the Break-up Fee to the Stalking Horse Bidder, if applicable, (g) providing that the Sale Order is effectively immediately upon entry pursuant to Bankruptcy Rule 6004, and (h) providing such other relief as the Debtor shall reasonably request.

Respectfully submitted on behalf of the Debtor, this the 5th day of April, 2013.

NORTHEN BLUE, LLP

/s/ John A. Northen
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441

*Counsel for the Debtor*