UNITED STATES BANKRUPTCY COURT'
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| Hampton Capital Partners, LLC ) | Ch. 11 Case No. B-13-80015 |
| ) | |
| Debtor. ) | |

**MOTION OF WESTPOINT HOME, LLC AND WP PROPERTIES
WAGRAM LLC TO COMPEL REJECTION OF EXECUTORY CONTRACT**

WestPoint Home, LLC and its wholly owned subsidiary WP Properties Wagram LLC (collectively, "WPH"), by their undersigned attorneys, hereby move for entry of an order directing and compelling the above-captioned Debtor to reject an executory contract with WPH (the "Motion"). In support of the Motion, WPH has filed the Declaration of Yevgeny Fundler, General Counsel of WestPoint Home, LLC (attached as Exhibit 1 hereto) and further states as follows:

**JURISDICTION**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 365(d)(2), 365(b)(1) and 503(b) and Fed. R. Bankr. P. 9014.

**BACKGROUND**

3. By letter agreement dated April 24, 1988 (the "1988 Letter Agreement")[1], between JPS Acquisition Corp., J.P. Stevens & Co., Inc. ("J.P. Stevens") and other

---

[1] A copy of the 1988 Letter Agreement and each of the other documents referenced hereafter are attached as Exhibit A - E to the Yevgeny Fundler Declaration.

parties, JPS Acquisition Corp. agreed to purchase, and J.P. Stevens agreed to sell all of the assets used in the operation of several of J.P. Stevens' divisions, including the "Carpet" division, today operated and owned by the Debtor.

4. By Omnibus Real Estate Closing Agreement dated May 9, 1988 (the "Omnibus Agreement"), between J.P. Stevens, JPS Acquisition Corp., and other parties, J.P. Stevens agreed to convey fee simple title to Carpet of that portion of Wagram (f/k/a the Bob Stevens Plant) then occupied by Carpet, along with non-exclusive rights to common areas and "steam and other support facilities and services which will provide Carpet with the ability to operate the business of Carpet in the manner currently being conducted." (Omnibus Agreement, Art. II at p. 3.)

5. By Memorandum of Agreements; Agreement and Assignment dated November 16, 1995 (the "Gulistan Agreement"), Carpet and JPS Textile Group agreed to transfer to Gulistan (through Gulistan Holdings) the "Carpet Portion of the Wagram Plant." Additionally, pursuant to the Gulistan Agreement, Stevens, the successor to the interests of J.P. Stevens, is required to provide and agreed to provide Gulistan "with the ability to operate the business comprised of such assets in the manner currently [that is, as of April 24, 1988] being conducted." (Gulistan Agreement at Section 2, p. 3 (bracketed language in original).)

6. By letter dated November 17, 1992, from West Point-Pepperell to JPS Textile Group, Inc. (f/k/a JPS Acquisition Corp., the purchaser under the 1988 Letter Agreement) the use of Wagram's utilities - namely steam and water and waste treatment - were allocated among and between the parties (the "1992 Letter"). Collectively, the 1988 Letter Agreement, Omnibus Agreement, Gulistan Agreement, and 1992 Letter constitute

an executory services agreement between WPH and the Debtor (the "<u>Services Agreement</u>").

7. On June 23, 2005, WestPoint Home, Inc. ("<u>Home</u>"), along with certain subsidiaries and affiliates, entered into an Asset Purchase Agreement (the "<u>APA</u>") with Stevens and certain of its subsidiaries, pursuant to which Home purchased substantially all of Stevens' assets, including Wagram.

8. Under the APA, Home could designate which contracts and properties it actually wanted to purchase as part of the transaction. Wagram was designated for purchase and the Gulistan Agreement was specifically assumed and assigned to Home by notice filed with the Bankruptcy Court on July 22, 2005.

9. At the closing, on August 8, 2005, the steam facility was purchased by WP Properties Wagram Facility, LLC.

10. Since the closing, WPH has been providing steam, and water and waste treatment services to Gulistan.

**RELIEF REQUESTED**

11. It is essential that the Debtor make its decision to reject the Services Agreement immediately. It is appropriate for the Court to compel the Debtor to reject the Services Agreement immediately in this case because based on information and belief, the Debtor is no longer operating its Wagram facility and, therefore, no longer needs the services provided under the Services Agreement. Moreover, so long as the contract is not rejected, WPH is theoretically obligated to continue to operate the waste water treatment facility at significant cost.

### THE DEBTOR SHOULD BE COMPELLED TO REJECT THE EXECUTORY CONTRACT

12. Section 365(d)(2) provides that "the court, on request of any party to an [executory contract or lease], may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2). Upon the moving party's request, the court must balance the debtor's need to carefully consider whether rejecting [the contract or lease] is in the best interests of the estate with the [non-debtor party's] interest in knowing whether the debtor will perform …." *In re Sae Young Westmont-Chicago, L.L.C.*, 276 B.R. 888, 893 (Bankr. N.D. Ill. 2002). Indeed, the option to assume or reject a contract "involve[s] not only a privilege but also a *duty* to ascertain within a reasonable period of time whether or not there [is] a possible profit in the contract for the estate." 2 *Collier on Bankruptcy* ¶ 365.01 at n. 3 (15th ed. 1994) (emphasis added).

13. As such, § 362(d)(2) is designed to provide a remedy in "circumstances where a creditor may not be able to afford being left in limbo about its status vis-à-vis the estate." *In re Sae Young Westmont-Chicago, L.L.C.*, 276 B.R. 888, 893 (Bankr. N.D. Ill. 2002). Uncertainty may present risks, and thus if the counterparty "cannot afford the uncertainty during the pendency of the reorganization [it] may request the bankruptcy court to order the debtor to decide whether to assume or reject the contract within a specified period." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984) *cert denied*, 469 U.S. 982 (1984).

14. Once a party in interest to a contract or lease moves to compel assumption or rejection of such contract, the time in which the debtor must decide whether to assume or reject is within the discretion of the court. *In re Whitcomb & Keller Mortgage Co.*, 715

F.2d 375, 379 (7th Cir. 1983); *In re Resource Technology*, 254 B.R. 215, 227 (Bankr. N.D. Ill. 2000). In determining what constitutes "reasonable time" within which the debtor must assume or reject an executory contract, bankruptcy courts consider a number of factors, including "the nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary." *In re Midtown Skating Corp.*, 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980). The financial or other needs of the non-debtor party should thus be taken into account the decision to shorten time. *In re Taber Farm Assocs.*, 115 B.R. 455, 456 (Bankr. S.D.N.Y. 1990) (stating that debtor's allowed time period for assuming a contract must be "balanced against the financial drain upon [the counter-party's] resources if the debtor does not act expeditiously . . ."). *See also Escondido Mission Village L.P. v. Best Products Co.,* 137 B.R. 114, 116 (S.D.N.Y. 1992)

15. WPH respectfully requests the Court to give serious consideration to the hardships imposed on it if the debtor were given additional time to decide whether to reject the Services Agreement.

16. In the present case, a review of the aforementioned factors support a finding that the Debtor should be compelled to reject the Service Agreement immediately. First, the Debtor is no longer using the services. Second, WPH is incurring great expense continuing to operate the waste water treatment facility awaiting a decision by the Debtor to reject the contract. Third, it does not appear that the Debtor, or any other entity, will resume operations in the Wagram facility.

17. Several courts have applied other similar factors to find cause to order the acceleration of the debtor's decision to assume or reject. *See Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 106 (2d Cir. 1982) (affirming bankruptcy court's decision giving debtor 30 days to assume or reject unexpired lease); *In re Taber Farm Assocs.*, 115 B.R. at 457 (ordering debtor to assume or reject sale agreement within 120 days based on financial hardship imposed on seller by further delay, given debtor's default under the agreement); *In re Beker Indus. Corp.*, 64 B.R. 890 (Bankr. S.D.N.Y. 1986) (ordering debtor to assume or reject agreements within approximately four months of order granting motion to compel); *In re Lionel Corp.*, 23 B.R. 224, 226 (Bankr. S.D.N.Y. 1982) (ordering debtor to assume or reject lease 20 days from entry of order as this represented six months from appointment of real estate consultant (and nine months from petition date), which was deemed to be sufficient time for debtor to make decision)); *In re Merchants Plaza, Inc*), 35 B.R. 888, 894 (Bankr. E.D. Tenn. 1983) (on lessor's motion for relief from automatic stay, court ordered debtor to assume or reject lease within approximately 15 days from order); *In re Loop Hosp. P'ship*, 35 B.R. 929, 939 (Bankr. N.D. Ill. 1983) (ordering debtor to assume or reject equipment lease within 45 days of order granting motion); *In re Anderson*, 36 B.R. 120, 126 (Bankr. D. Haw. 1983) (ordering debtor to assume or reject contract within 120 days of order based on financial losses incurred by creditor as a result of Debtor's delay).

18. WPH is prejudiced by the Debtor's delay in rejecting the Services Agreement. Accordingly, the Debtor should be compelled to reject the Services Agreement upon the entry of an order granting the relief requested herein.

## CONCLUSION

WHEREFORE, WPH respectfully requests entry of an order compelling the Debtor to immediately reject the Services Agreement, and granting such other and further relief as the Court deems just.

Dated: April 12, 2013

/s/ Nicholas C. Brown
Nicholas C. Brown
Howard, Stallings, From & Hutson, P.A.
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Phone (919) 821-7700
Facsimile (919) 821-7703

- and -

Jo Christine Reed (admitted *pro hac vice*)
Dentons US LLP
1221 Avenue of the Americas
25th Floor
New York, NY 10020
Phone (212) 398-5236
Facsimile (212) 768-6800